UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

HELEN RUSHLOW,

        Plaintiff,

v.

CARL SALVO,

        Defendant.

C.A. No. _____

# COMPLAINT

Plaintiff Helen Rushlow ("Plaintiff" or "Rushlow") brings this Complaint against Defendant Carl Salvo ("Defendant" or "Salvo") (together, the "Parties") for declaratory judgment, breach of contract, unjust enrichment, breach of fiduciary duty, and violations of R.I. Gen. Laws §§ 7-1.2-1502 and 7-16-22.  Plaintiff seeks monetary, equitable, and injunctive relief.

## Parties

1. Plaintiff Rushlow is a resident of Ontario, Canada.

2. Defendant Salvo is a resident of the State of Rhode Island.

## Jurisdiction and Venue

3. The Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and Defendant, and the matter in controversy for each Defendant exceeds the sum or value of $75,000, exclusive of interest and costs.

4. The Court has personal jurisdiction over Defendant because their acts and omissions form the basis for this Complaint, and these acts and omissions occurred in Rhode Island or were affirmatively directed by Defendant against Plaintiff's activities in Rhode Island.

5. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Rhode Island.

**Facts**

6. Plaintiff Rushlow is an education professional with a degree in early childhood education.

7. Defendant Salvo is a business developer with a background in technology.

8. In or about 2016, Rushlow and Salvo decided they wanted to open a preschool together.

9. Rushlow and Salvo agreed that Rushlow would be responsible for all educational and operational aspects of the preschool, while Salvo would be responsible for bookkeeping, accounting, and building maintenance.

10. In exchange for their respective contributions to the preschool, Rushlow and Salvo agreed that they would each get a 50% ownership stake in the business.

11. In their application for an SBA 504 loan through the Ocean State Business Development Authority ("OSBDA"), for example, Rushlow and Salvo stated that they would be equal, 50/50 owners of the business.

12. Rushlow developed a competitive business plan for the preschool based on her education, training, certification, and professional experience in early childhood education, including the Waldorf Early Childhood and LifeWays North America pedagogy.

13. Rushlow also drew upon her experience working at a Waldorf/LifeWays-inspired school in Middletown, Rhode Island, where she observed first-hand the need and demand for more Waldorf/LifeWays-inspired programs in Rhode Island.

14. In their SBA 504 loan application, for example, Rushlow and Salvo wrote: "'LifeWays' has created a niche market and [the] Preschool will be working towards accreditation to become a representational site for the LifeWays organization[.]"

15. In or about April 2017, Rushlow and Salvo successfully obtained an SBA 504 loan through the OSBDA and BankNewport, which they used to purchase a property in Barrington, Rhode Island (the "Property"), where they would eventually operate the preschool. The loan is comprised of three parts: one (1) term loan in the amount of $315,000, one (1) interim loan in the amount of $213,000, and one (1) 504 debenture loan in the amount of $222,000.

16. Rushlow and Salvo set up a holding company, 136 County Road Real Estate, LLC ("136 CRRE"), to purchase the Property. 136 CRRE is the "borrower" in the SBA 504 loan transaction.

17. Rushlow and Salvo also set up an operating company, Apple Blossom Preschool & Early Learning Center, Inc. ("Apple Blossom"). Together, 136 CRRE and Apple Blossom are referred to herein as "the Business."

18. Rushlow, Salvo, and Apple Blossom each individually guaranteed the SBA 504 loan to 136 CRRE for the purchase of the Property. Rushlow executed the guaranty based on her understanding that she and Salvo were equal owners of the Business.

19. The SBA 504 loan is secured by a first, second, and third mortgage on the Property and first, second, and third priority UCC security interests in "all business assets" of Apple Blossom.

20. The SBA 504 loan transaction also required that 136 CRRE and Apple Blossom execute a lease agreement obligating Apple Blossom to pay rent to 136 CRRE in the amount of $3,200 per month.

21. Because Rushlow was involved in a divorce proceeding in Ontario at the time they established 136 CRRE and Apple Blossom, Rushlow and Salvo agreed that they would put both companies in Salvo's name until Rushlow's divorce proceeding finalized. They did so on the belief that Rushlow's then-husband might otherwise try to attach the assets of the Business. For this reason, Salvo was registered as the sole member of 136 CRRE and the sole shareholder of Apple Blossom. Notwithstanding that fact, however, Rushlow and Salvo understood and agreed that they were equal owners of both companies and that Rushlow would be recognized as a member and shareholder of 136 CRRE and Apple Blossom, respectively, once her divorce proceeding finalized.

22. Since its incorporation, Salvo has been Apple Blossom's President and Rushlow has been its Vice President.

23. In preparation to open the Business, Rushlow secured necessary licensing from the Rhode Island Department of Children, Youth and Families, the Rhode Island Department of Health, the Rhode Island State Fire Marshal, and the Rhode Island Department of Education.

24. Rushlow recruited and hired all personnel, including full-time teachers, substitute teachers, support staff, food service staff, and cleaning staff, and she oversaw all student recruitment and enrollment.

25. Rushlow also made numerous investments in both Apple Blossom and 136 CRRE based upon her understanding that she was an equal owner of the Business. Among other things, she:

    a. Worked virtually around-the-clock without pay;

    b. Paid out of pocket for construction labor and materials to install new flooring and insulation, bring the Property into ADA compliance, remove asbestos, renovate the third floor into a loft space, and to make various other improvements to the Property;

    c. Covered Apple Blossom's rent to 136 CRRE for several months out of pocket;

    d. Paid several employees' wages out of pocket;

    e. Paid out of pocket for several employees' professional memberships and enrollment in professional development courses; and

    f. Purchased the furniture, equipment, materials, and food needed to run the preschool.

26. Apple Blossom opened its doors to students in or about January 2018 and has been in near-continuous operation as a preschool and early learning center since that time.

27. Rushlow and Salvo held themselves out to their students, employees, and the public as business partners. Rushlow went by the title "Director" while Salvo went by the title "Chief Strategy Officer." In her capacity as Director, Rushlow exercised control over all of Apple Blossom's educational programming, daycare offerings (including meals), and staffing. Salvo's involvement was less hands-on, with a focus on finance and accounting.

28. In or about the spring of 2019, Salvo told Rushlow that he wanted to "expand" the Business by acquiring a second preschool and day-care center in Barrington. Rushlow disagreed, telling Salvo that they should focus on establishing Apple Blossom rather than increasing the number of seats they offered.

29. Following their disagreement over expansion, Salvo began expressing to Rushlow and third parties that the Business was his "retirement fund;" that Rushlow was not managing the Business well; and that he planned to "replace" her.

30. Salvo began to require certain tuition payments to be made directly to 136 CRRE rather than to Apple Blossom.

31. Salvo also increased Apple Blossom's monthly rental payments to 136 CRRE from $3,200 per month to approximately $4,500 per month.

32. Rushlow settled her divorce in Ontario in or about July 2019. Contrary to their agreement, however, Salvo never effectuated the transfer of 50% of Apple Blossom's stock into Rushlow's name or perfected Rushlow's status as an equal member of 136 CRRE.

33. Rather, Salvo began to act in an openly hostile manner towards Rushlow. On one occasion, for example, Salvo disparaged and yelled at Rushlow in front of their employees, causing Rushlow to feel unsafe. He also regularly consulted with Rushlow's part-time staff regarding business matters instead of consulting directly with Rushlow.

34. In July 2020, Rushlow and Salvo agreed that safety considerations related to the COVID-19 pandemic (including a lack of available staffing and lack of capacity to train new staff) required them to close the preschool on a temporary basis. A dispute arose between them, however, regarding the timing and details of reopening the preschool.

35. On or about August 2, 2020, Salvo sent Rushlow a letter purporting to "offer" her a new managerial position at Apple Blossom and announcing that he had hired Rushlow's former part-time assistant into Rushlow's former position of "Director."

36. Salvo also referred to himself in the letter as the sole owner of Apple Blossom and 136 CRRE, and invited Rushlow to "set up . . . a time to discuss monetary compensation for perhaps what you feel the hours and pay should be in light of your new position and responsibilities" – even though Rushlow had never received wages or a salary for her work as Apple Blossom's Director.

37. Rushlow declined Salvo's "offer" to take the new position, stating that "I've never considered myself as anything but your partner."

38. Almost immediately thereafter, Salvo froze Rushlow out of the Business and cut off her access to her Apple Blossom e-mail account, demanded that she return her keys and files to him, and directed her to "refrain from contacting anyone affiliated with Apple Blossom," as if she were merely an employee whose employment had been terminated.

39. Salvo has refused to allow Rushlow to issue any sort of statement to Apple Blossom families explaining the circumstances of her departure from her role as its Director.

40. Salvo has continued to operate the Business without any involvement from Rushlow whatsoever, even though Salvo lacks the educational background and certifications necessary to do so.

41. Salvo has continued to advertise Apple Blossom as a Waldorf/LifeWays school even though none of the individuals currently affiliated with or employed by the preschool have the same Waldorf/LifeWays training, certification, or experience as Rushlow.

42.     Salvo has made several decisions which, in Rushlow's judgment, are harmful to the Business and its reputation in the community. For example, in or about January 2021, Salvo changed Apple Blossom's phone number, even though the original phone number is engraved on the sign on the Property and printed on all Apple Blossom business cards and stationery, and he made careless changes to the website.

43.     On several occasions in the fall and winter of 2020, Rushlow requested access to the financial records of Apple Blossom and 136 CRRE for the purpose of evaluating the financial condition of the Business, and Salvo refused to grant her access to anything other than superficial, high-level summaries. For example, in response to a request for access to records demonstrating Apple Blossom's "current enrollment and monthly tuition income, the status of its loan obligations, . . . and its current monthly payroll expenses, including any salary or other remunerations paid to Mr. Salvo," Salvo e-mailed Rushlow a one-page balance sheet. The balance sheet did not contain any information regarding the company's monthly income, such as its tuition income, or expenses, such as its loan or payroll obligations.

44.     Upon information and belief, Salvo unilaterally decided to increase the principal amount of the SBA 504 loan that Rushlow personally guaranteed.

45.     Rushlow has never received any dividends from Apple Blossom or 136 CRRE even though both companies are profitable.

**Count I – Declaratory Judgment**

46.     Plaintiff re-alleges and incorporates by reference the allegations in all of the foregoing paragraphs as if they are fully set forth herein.

47.     Plaintiff and Defendant Salvo's agreement requires that Plaintiff and Defendant Salvo have equal ownership of Apple Blossom and 136 CRRE.

48. Defendant Salvo has refused and continues to refuse to recognize Plaintiff's 50% ownership of Apple Blossom and 136 CRRE.

49. Wherefore, Plaintiff is entitled to a declaration that she owns 50% of the stock of Apple Blossom and that she has a 50% membership interest in 136 CRRE, in addition to other relief that the Court deems appropriate.

## Count II – Breach of Contract

50. Plaintiff re-alleges and incorporates by reference the allegations in all of the foregoing paragraphs as if they are fully set forth herein.

51. Plaintiff and Defendant Salvo are parties to an agreement to be equal, 50/50 owners of Apple Blossom and 136 CRRE.

52. Plaintiff and Defendant Salvo's agreement is a valid and enforceable contract.

53. Defendant Salvo breached the agreement when he failed and refused to perfect Plaintiff's 50% ownership interests in Apple Blossom and 136 CRRE; terminated her from her role as Apple Blossom's Director; purported to "offer" her a position as a low-level manager; locked her out from the operation of the Business; and stonewalled her requests for access to the financial records of Apple Blossom and 136 CRRE.

54. Defendant Salvo's acts, inactions, conduct, and/or transactions related to, arising from, or in connection with his agreement with Plaintiff constitute breaches of their agreement.

55. Defendant Salvo's breach caused, and continues to cause, damages to Plaintiff.

56. Wherefore, Plaintiff is entitled to specific performance of the Parties' agreement.

## Count III – Unjust Enrichment

57. Plaintiff re-alleges and incorporates by reference the allegations in all of the foregoing paragraphs as if they are fully set forth herein.

58. Between 2017 and the present, Plaintiff invested hundreds of thousands of dollars in Apple Blossom and 136 CRRE. Among other things, Plaintiff paid out of pocket for improvements to the Property (such as new flooring and asbestos removal); she covered Apple Blossom's rental payments to 136 CRRE; she purchased the food and supplies needed to run Apple Blossom's preschool and early learning center; she covered Apple Blossom's payroll expenses; and she worked as Apple Blossom's Director without compensation from January 2018 through August 2020. To the extent Apple Blossom and 136 CRRE are owned by Defendant Salvo alone, Plaintiff's investments in and services to Apple Blossom and 136 CRRE conferred a benefit upon him.

59. Defendant Salvo accepted and appreciated the value of Plaintiff's investments and services.

60. Plaintiff reasonably expected that Defendant Salvo would transfer 50% of the stock of Apple Blossom and a 50% membership interest in 136 CRRE to her in return for her investments and services.

61. It would be unjust to allow Defendant Salvo to appreciate the value of Plaintiff's investments and services without recognizing and effectuating her ownership interest in Apple Blossom and 136 CRRE in return.

62. By refusing to recognize Plaintiff's 50% ownership interest in Apple Blossom and 136 CRRE, or alternatively by failing to reimburse Plaintiff for the value of her investments in and services to Apple Blossom and 136 CRRE, Defendant Salvo has been unjustly enriched and Plaintiff has been harmed.

63. Wherefore, Plaintiff is entitled to 50% of the stock of Apple Blossom and a 50% membership interest in 136 CRRE or, alternatively, to be reimbursed for the value of her investments and services.

### Count IV – Breach of Fiduciary Duty

64. Plaintiff re-alleges and incorporates by reference the allegations in all of the foregoing paragraphs as if they are fully set forth herein.

65. Because Plaintiff and Defendant Salvo were co-owners of Apple Blossom, a closely held corporation, and 136 CRRE, a limited liability company, Defendant Salvo owed Plaintiff a duty of the utmost care, loyalty, and good faith.

66. Plaintiff had a reasonable expectation that Defendant Salvo would recognize her 50% ownership interest in Apple Blossom and 136 CRRE; that she would be entitled to 50% of the value of Apple Blossom and 136 CRRE; that she would remain Apple Blossom's Director; and that she would realize a profit from her role as 50% owner of Apple Blossom and 136 CRRE.

67. Defendant Salvo breached his fiduciary duty to Plaintiff by cutting off her access to Apple Blossom and 136 CRRE, terminating her from her position as Apple Blossom's Director, withholding financial information about Apple Blossom and 136 CRRE, barring her involvement in any business decisions, and other oppressive and unjustifiable conduct.

68. As a direct and proximate result of Defendant Salvo's breach, Plaintiff has suffered and continues to suffer damages in an amount including but not limited to lost salary and corporate earnings.

### Count IV – Inspection of Books and Records

69. Plaintiff is a 50% owner of Apple Blossom and 136 CRRE. She has the right under R.I. Gen. Laws §§ 7-1.2-1502 and 7-16-22 to inspect relevant information regarding the financial condition of the companies.

70. Defendant Salvo is unlawfully preventing Plaintiff's access to the books and records of Apple Blossom and 136 CRRE in violation of R.I. Gen. Laws §§ 7-1.2-1502 and 7-16-22.

71. Wherefore, Plaintiff is entitled to an Order compelling Defendant Salvo to permit Plaintiff access to the corporate books, including reasonably detailed information concerning each company's income and expenses, and award her statutory damages.

### **Prayers for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment on each count in favor of Plaintiff;

B. Enter an order declaring that Plaintiff is a 50% owner of Apple Blossom and 136 CRRE;

C. Enter an order compelling Defendant Salvo to issue half the stock in Apple Blossom to Plaintiff or, alternatively, compelling Defendant Salvo to pay Plaintiff restitution for the investments and services she provided to Apple Blossom;

D. Enter an order compelling Defendant Salvo to amend the articles of organization and LLC operating agreement of 136 CRRE to admit Plaintiff as a member or, alternatively, compelling Defendant Salvo to pay Plaintiff restitution for the investments and services she provided to 136 CRRE;

E. Award Plaintiff compensatory damages and lost profits, plus interest, for Defendant Salvo's breaches of contract and fiduciary duty;

F. Enter an order compelling Defendant Salvo to permit Plaintiff to inspect the books and records of Apple Blossom and 136 CRRE and awarding statutory damages to Plaintiff for Defendant Salvo's violations of R.I. Gen. Laws § 7-1.2-1502;

G. Award Plaintiff statutory interest, attorney's fees and costs as appropriate; and

H. Award Plaintiff such other relief as the Court deems just, appropriate, and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

HELEN RUSHLOW

By and through her attorneys,

/s/ Caroline R. Thibeault
Caroline R. Thibeault (#9697)
Timothy K. Baldwin (#7889)
Whelan Corrente & Flanders LLP
100 Westminster Street, Suite 710
Providence, RI  02903
(401) 270-4500
(401) 270-3760
cthibeault@whelancorrente.com
tbaldwin@whelancorrente.com

Dated:  February 11, 2021

WC54439